IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| JERSON MURILLO and MARVIN MURILLO, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Civil Action No. 1:24-cv-01764 AJT/IDD |
| AXIS HOSPITALITY CONSTRUCTION, LLC, *et al.*, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court on named Plaintiffs Ana Perdomo Paz, Enrique Villaroel, Ervin Romero, and Jonathan Rios, on behalf of themselves and all opt-in Plaintiffs (collectively, the "Plaintiffs") Motion for Default Judgment ("Motion") against Defendants Upland Hospitality Group LLC ("Upland"), Vargas Demo and Paint, LLC ("Vargas Demo"), Jose Vargas, and Melvin Agular (collectively, the "Defendants"). Dkt. No. 84. After the Defendants failed to timely file a responsive pleading or otherwise defend this action, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation. Upon consideration of the Complaint, Plaintiffs' Motion, and the underlying record, the undersigned Magistrate Judge makes the following findings and recommends that Default Judgment be entered against the Defendants.

## I. INTRODUCTION

Plaintiffs filed this action on October 4, 2024. Dkt. No. 1 An amended complaint ("Am.

Compl.") was later filed on January 29, 2025. Dkt. No. 22. Plaintiffs have sued the Defendants for unpaid wages under the Federal Fair Labor Standards Act of 1938, as amended 29 U.S.C. § 201 et seq. ("FLSA"), the Virginia Minimum Wage Act ("VMWA"), Virginia Code §§ 40.1-28.8 *et* seq., the Virginia Wage Payment Act, Va. Code Ann. § 40.1-29 ("VWPA"), and the Virginia Overtime Wage Act. Va. Code Ann. § 40.1-29.2 ("VOWA") Am. Compl. ¶ 2. Plaintiffs allege that the Defendants failed to pay the Plaintiffs for all hours worked on behalf of the Defendants and for overtime hours worked at the appropriate overtime rate. Am. Compl. ¶ 2.

In their Amended Complaint, Plaintiffs seek unpaid wages, including unpaid overtime wages, liquidated damages, pre-judgment interest at the statutory rate, reasonable attorney's fees and costs, treble damages, and civil monetary penalties on behalf of themselves and "all other similarly situated who worked for Defendants in the United States (FLSA collective) or Virginia (VMWA, VWPA, and VOWA Rule 23 class)." Am. Compl. ¶¶ 2, 6-11. This Court granted the Plaintiffs' Motion to Certify Class on June 23, 2025. Dkt. No. 64. The Amended Complaint includes the following five claims against the Defendants: (1) Violation of the FLSA; (2) Violation of the VMWA; (3) Violation of the VWPA for failure to pay proper wages; (4) Violation of the VWPA for failure to provide accurate itemized wage statements; and (5) Violation of the VOWA. Am. Compl. ¶¶ 76-123. Based on these claims, Plaintiffs allege in their Motion that they are entitled to an entry of judgment in the amount of $965,401.09 plus attorney's fees and costs. Motion for Def. J at 28-29; Plaintiffs' Supplemental Brief in Support of Their Motion for Default Judgment [Dkt. No. 194] (hereinafter "Supplemental Brief") at 5-6.

### A.  Jurisdiction and Venue

This Court has subject matter jurisdiction over this case, pursuant to 28 U.S.C. § 1331, because the Complaint raises a federal question under the Fair Labor Standards Act, 29 U.S.C. §

2

201, *et seq*. This Court has supplemental jurisdiction over the remaining state law claims, pursuant to 28 U.S.C. § 1367(a), because the state law claims pertain to the same alleged failure to pay Plaintiffs' due wages, and, therefore, are so related to the federal claims that the claims are of the same nucleus of operative facts.

The Court has personal jurisdiction over the Defendants. In that regard, two requirements must be satisfied for this Court to exercise personal jurisdiction over the Defendants. First, Virginia's long-arm statute must authorize the exercise of jurisdiction. *CFA Inst. V. Inst. Of Chartered Fin. Analysis of India*, 551 F. 3d 285, 292 (4th Cir. 2009). Second, if that authorization exists, then the Due Process Clause of the Fourteenth Amendment requires that the defaulting defendant has sufficient minimum contacts with the forum state. *Christian Sci. Bd. Of Dirs. Of the First Church of Christ, Scientist v. Nolan*, 259 F. 3d 209, 205 (4th Cir. 2001). Particularly, the defendant's conduct must have such a connection with Virginia that it is fair for the defendant to be required to defend themselves in a court in the Commonwealth. *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414-15, 104 S. Ct. 1868, 80 L.ED.2d 404 (1984).

In this case, all Defendants allegedly jointly employed the Plaintiffs. Am. Compl. ¶ 2. First, as to Vargas Demo and Upland, Virginia's long-arm statute provides that a court may exercise personal jurisdiction over a person or entity "who acts directly or by an agent, as to a cause of action arising from the person's . . . (2) contract[] to supply services or things in this Commonwealth." Va Code § 8.01-328.1. Upland and Vargas Demo are two limited liability companies that were subcontractors in contractual relationships with Axis Hospitality Construction LLC (the "Axis Hospitality" or "non-defaulting Defendant"). Am. Compl. ¶¶ 23, 24, and 39. Upland and Vargas Demo contracted with Axis Hospitality to employ the Plaintiffs to work on construction projects in Virginia. Am. Compl. ¶¶ 37 and 39. These contracts for employee

3

services bring Vargas Demo and Upland within Virginia's long-arm statute. Secondly, Vargas Demo and Upland have sufficient minimum contacts with the state of Virginia because they subcontracted with Axis Hospitality to employ the Plaintiffs to work on three construction projects throughout the state. *Id.* Therefore, there is personal jurisdiction over Defendants Vargas Demo and Upland because the Plaintiffs' claims arise out of the Defendants' work in Virginia.

Defendant Jose Vargas is the owner of Vargas Demo and was actively involved in the Defendants' business operations. Am. Compl. ¶ 26. Defendant Melvin Agular is a manager of Upland and also was involved in the Defendants' business operations. Am. Compl. ¶ 27. Jose Vargas and Melvin Agular both oversaw wage and payroll details for the Plaintiffs while they worked on construction projects in Virginia. Am. Compl. ¶¶ 26-27. Thus, Jose Vargas and Melvin Agular fall under Virginia's long-arm statute because they provided services in Virginia under Vargas Demo's and Upland's subcontracts with Axis Hospitality. Further, exercise of personal jurisdiction over Jose Vargas and Melvin Agular comports with the Due Process Clause of the Fourth Amendment because it is reasonable to conclude that based upon their supervision of the work, wages, and payroll of the Plaintiffs on the construction projects in Virginia, Vargas and Agular could face claims against them in Virginia for any wrongdoing that arose from their supervision of those projects. Therefore, it is fair to require these Defendants to defend themselves in this matter in Virginia.

Finally, venue is proper under 28 U.S.C. § 1391 because the claims arise out of work performed on a construction project in Chantilly, Virginia, which is within the Eastern District of Virginia. Compl. ¶ 38. Since, a substantial part of the events or omissions giving rise to the claim occurred in this district, venue is proper in this district.

**B. Service of Process**

Under Rule 4(h), service upon a corporation, partnership, or other unincorporated association shall be effected "in the manner prescribed by Rule 4(e)(1) for serving an individual; or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ P. 4(h). Summons were issued as to Upland and Vargas Demo on October 7, 2024. Dkt. No. 2. On December 3, 2024, Plaintiffs, through a private process server, served Upland by serving the summons and the Complaint on Eliza Visconte, the Virginia registered agent of Upland. Dkt. No. 9; *See* Mem. In Supp. Of Mot. For Default J. at 2. On December 16, 2024, Plaintiffs, through a private process server, served Vargas Demo by serving the summons and the Complaint on Suhelen Pacheco Lopez, the registered agent of Vargas Demo. Dkt. No. 10.

Summons for Defendants Jose Vargas and Melvin Agular were issued on February 5, 2025. Dkt. No. 29. On February 14, 2025, a process server delivered the summons, Complaint, and accompanying documents to Jasmine Borjas, Jose Vargas' ex-wife and co-resident at Jose Vargas' home. Dkt. No. 30. On March 19, 2025, a process server delivered the summons, Complaint, and accompanying documents on Melvin Agular at his home. Mem. In Supp. Of Mot. For Default J. at 2. Therefore, Plaintiffs properly served the Defendants as required under Rule 4.

**C. Grounds for Default Judgment**

Plaintiffs filed their Complaint on October 4, 2024. Dkt. No. 1. Plaintiffs later filed their Amended Complaint on January 29, 2025. Dkt. No. 22. Neither Jose Vargas, Melvin Agular, Upland, nor Vargas Demo filed an answer or any other responsive pleading to the Complaint or the Amended Complaint. On June 23, 2025, United States District Judge Anthony Trenga ordered Plaintiffs to obtain a default from the Clerk, pursuant to Fed. R. Civ. P. 55(a), against Defendants

Upland, Vargas Demo, Jose Vargas, and Melvin Agular. Dkt. No. 65. Plaintiffs filed a Request for Entry of Default as to these four Defendants on June 24, 2025, and the Clerk filed Entry of Default that day. Dkt. Nos. 66, 67. Plaintiffs then filed their Motion for Default Judgment on August 4, 2025. Dkt. No. 84. The Court conducted a hearing on the matter on August 29, 2025. Dkt. No. 94.

After Defendants failed to respond to either the Amended Complaint or the Motion for Default Judgement, and failed to appear at the hearing, or otherwise defend this matter, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation.

## II. EVALUATION OF PLAINTIFF'S COMPLAINT

Rule 55 of the Federal Rules of Civil Procedure ("FRCP") provides for the entry of default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." A defendant in default concedes the factual allegations of the complaint. *See, e.g.*, *DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 322 n.2 (4th Cir. 2008); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006); *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). Default does not, however, constitute an admission of the adversary's conclusions of law and is not to be "treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Ryan*, 253 F.3d at 780 (quoting *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Instead, the Court must "determine whether the well-pleaded allegations in [the plaintiff's] complaint support the relief sought in [the] action." *Id*.

Thus, in issuing this Report and Recommendation, the undersigned Magistrate Judge must evaluate Plaintiff's claims against the standards of Rule 12(b)(6) of the FRCP to ensure that the Complaint contains plausible claims upon which relief may be granted. *See Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (explaining the analysis for examining a plaintiff's claims under a 12(b)(6) motion to dismiss). To meet this standard, a complaint must set forth "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether allegations are plausible, the reviewing court may draw on context, judicial experience, and common sense. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679). Here, The Plaintiffs' Amended Complaint asserts 5 claims against the Defendants: (1) Violation of the FLSA; (2) Violation of the VMWA; (3) Violation of the VWPA for failure to pay proper wages; (4) Violation of the VWPA for failure to provide accurate itemized wage statements; and (5) Violation of the VOWA. Am. Compl. ¶¶ 76-123.

### III. <u>FACTUAL FINDINGS AND ANALYSIS</u>

Upon a full review of the pleadings, the undersigned Magistrate Judge finds that Plaintiffs have established the following facts. The Defendants employ laborers for various hotel construction projects. Am. Compl. ¶ 37. Defendants Upland Hospitality Group LLC ("Upland") and Vargas Demo and Painting, LLC ("Vargas Demo") entered subcontracts with non-defaulting Defendant Axis Hospitality Construction, LLC ("Axis Hospitality") to provide Axis Hospitality with labor to perform requested work on construction projects in Virginia. Am. Compl. ¶ 1. Under these contracts, Defendants Jose Vargas and Melvin Aguilar managed the subcontractor businesses, Upland and Vargas Demo, as the companies worked with Axis Hospitality to complete their projects. Am. Compl. ¶ 1. As managers of Upland and Vargas Demo, Defendants Melvin Aguilar and Jose Vargas were actively involved in the business operations for the three Virginia projects that the Plaintiffs worked on, including, but not limited to, overseeing wage and payroll details for the Plaintiffs. Am. Compl. ¶¶ 26, 27. At all times relevant to this action, the Defendants were employers as defined by the FLSA, VMWA, VWPA, and VOWA. Am. Compl. ¶ 21.

The Defendants hired the Plaintiffs to work under their service contracts with Axis Hospitality. Am. Compl. ¶ 2. Defendants agreed to compensate Plaintiffs on an hourly basis and classified the Plaintiffs as non-exempt employees under the FLSA. Am. Compl. ¶ 54. The Defendants collectively failed to pay the Plaintiffs for all hours worked and for overtime hours worked at the appropriate overtime rate for three different construction projects in Virginia. Am. Compl. ¶ 2. In their Motion, the Plaintiffs allege that for all times relevant for this action, the Plaintiffs worked for the Defendants on the following construction sites in Virginia: (1) Westfields Marriott Washington Dulles in Chantilly ("the Dulles Project"); (2) the Marriott Courtyard in Charlottesville ("the Charlottesville Project"); and (3) the Residence Inn in Manassas ("the Manassas Project") (collectively, the "Virginia Construction Projects"). Mem. in Supp. of Mot. For Default. J. at 3. At all relevant times, Plaintiffs were employees engaged in commerce within the meaning of 26 U.S.C. §§ 206, 207. Am. Compl. ¶ 18.

### A. Count I: FLSA Violation

The FLSA requires employers to pay covered employees a statutorily specified minimum wage for each hour worked (regular rate of pay), and not less than one and one-half times their regular rate of pay for all hours worked in excess of forty hours during any given workweek. 29 U.S.C. §§ 206(a), 207(a). To establish a violation of the FLSA minimum wage provisions, a plaintiff must show that he/she was: (1) employed by defendants; (2) engaged in commerce; (3) a covered employee not subject to any of the exemptions in 29 U.S.C. § Section 213; and (4) not compensated for all hours worked during each workweek at a rate equal to or greater than the then-applicable minimum wage. 29 U.S.C. § 206(a); *see Seagram v. David's Towing & Recovery, Inc.,* 62 F. Supp. 3d 467, 473 (E.D. Va. 2014). To establish a violation of the FLSA for non-payment of overtime hours, a plaintiff must satisfy factors (1)-(4) above, demonstrate that he/she worked over

forty hours per workweek, was not compensated at a rate of 1.5 times his/her regular rate of pay for each hour worked in excess of forty hours for each workweek, and that the employer knew or should have known that plaintiff worked overtime but failed to compensate plaintiff for it. *Seagram*, 62 F. Supp. 3d at 474; 29 U.S.C. § 207(a). Further, in order for a complaint to sufficiently state a claim for relief under FLSA, the complaint must at least allege approximate wages and should also contain either factual allegations of when the alleged wages were earned or at least provide an approximate number of hours allegedly worked without compensation. *Jones v. Imaginary Images, Inc.*, No. 3:12-CV-217, 2012 WL 3257888 at *11 (E.D. Va. Aug. 8, 2012). However, it is not required for the complaint to include an estimate of alleged hours for all proposed class members in a FLSA class action case. *Walker v. Serv. Corp. Int'l*, No. 4:10CV00048, 2011 WL 1370575 at *7 (W.D. Va. Apr. 12, 2011).

"Commerce" is defined as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). The FLSA provides employees coverage based on whether the employer or the employee is engaged in commerce. *See* 29 U.S.C. § 207(a)(l). The two forms of coverage are enterprise coverage and individual coverage, and employees can seek relief under either option. *Id.* For individual coverage, an employee is engaged in commerce where "[his/her] work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be in practical effect, a part of it, rather than an isolated local activity."[1] *Mitchell*

---

[1] *See also* 29 C.F.R. § 776.9 (internal quotation marks omitted) ("[E]mployees who are covered by the wage and hours provisions of the Act . . . are employees doing work involving or related to the movement of persons or things . . . among the several States or between any state and an outside place thereof . . . this does not include employees engaged in activities which merely affect such interstate or foreign commerce, the courts have made it clear that coverage of the Act based on engaging in commerce extends to every employee employed in the channels of such commerce or in activities so closely related to such commerce, as a practical matter, that they should be considered part of it.")

*v. Lublin,* 358 U.S. 207, 212 (1959). Enterprise coverage applies to employees who are "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(l). Such an enterprise is one which

> (A)(i) has employees engaged in commerce or the production of goods for commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

29 U.S.C. § 203(s)(l)(A).

Here, Plaintiffs allege sufficient facts demonstrating that they are entitled to seek relief under the FLSA. First, the facts set forth in the Amended Complaint, in conjunction with the documents submitted in support of this Motion, establish that the Plaintiffs and class members were employed by the Defendants beginning as early as January 2022 through October 2023.[2] Am. Compl. ¶¶ 43-52; Supplemental Brief at 2-3. Plaintiffs performed tasks such as cleaning services, painting, operator and drywall installation services, and building furniture. Am. Compl. ¶¶ 44, 47, 50, 53. Second, Plaintiffs were engaged in commerce and are seeking relief under enterprise coverage because Defendants are deemed an enterprise under 29 U.S.C. §§ 203(s), 203(r). Am. Compl. ¶ 19. Defendants are considered an enterprise because the Plaintiffs and class members were engaged in commerce by providing construction services for the Virginia Construction Projects, and the Defendants have an "annual gross volume of sales made or business done of not

---

[2] Plaintiffs' dates of employment are as follows: Ana Perdomo Paz worked on the Dulles Project from approximately January 2023 to September 2023; Enrique Villaroel worked on the Dulles Project from approximately January 2023 to March 2023 and the Charlottesville Project in or around March 2023; Ervin Romero worked on the Dulles Project from approximately January 2023 to August 2023; and Jonathan Rios worked on the Dulles Project from approximately March 2023 to October 2023 and the Charlottesville Project from approximately August 2023 to January 2024. Am. Compl. ¶¶ 43, 46, 49, 52. The final list of projects worked on and the length of time each of the Plaintiffs and class members worked on each project is included in Plaintiffs' Supplemental Brief, which reflects that at least one class member worked at each of the three Virginia Construction Project sites, and that members were employed from approximately January 2022 through October 2023.

10

less than $500,000." Am. Compl. ¶¶ 19, 37-46. Additionally, Defendants provided Plaintiffs the necessary equipment and materials to work on the Virginia Construction Projects. Am. Compl. ¶ 41.

Third, Defendants hired Plaintiffs and class members on an hourly basis as non-exempt employees entitled to minimum wage compensation under the FLSA, based on the Defendants' classification of their employees. Am. Compl. ¶ 54. Finally, Plaintiffs pled that the Plaintiffs and class members were paid less than the minimum wage for all hours worked during the relevant time period. Am. Compl. ¶¶ 56, 88, 101. Plaintiffs and class members were promised hourly wages of approximately $16-$24 per hour[3]. Am. Compl. ¶¶ 53, 50, 47, 44; Supplemental Brief at 2-3. For all times relevant to the Amended Complaint, each Plaintiff had an hourly wage-rate that was agreed upon by the Plaintiffs and the Defendants. Am. Compl. ¶ 42. Plaintiffs were required to work approximately ten (10) to twelve (12) hour shifts, approximately six (6) or seven (7) days each week, working a total of approximately fifty (50) to ninety (90) hours each week[4]. Am. Compl. ¶ 55. Therefore, Plaintiffs sufficiently stated a claim for unpaid minimum wages for all hours worked up to forty (40) hours per week

Next, the Court finds that Defendants failed to compensate Plaintiffs and Class members for all overtime compensation at the appropriate rate for all hours worked in excess of forty (40) each workweek. Am. Compl. ¶ 3. First, Plaintiffs and Class Members worked approximately ten (10) to fifty (50) hours of overtime a week. Am. Compl. ¶ 55. Second, Plaintiffs sufficiently pled

---

[3] The final list of hourly wages for Plaintiffs and all class members is included in Plaintiffs' Supplemental Brief, which reflects that all hourly wages ranged from $16 to $24. Supplemental Brief at 2-3.

[4] Plaintiffs' weekly hours of employment are as follows: Ana Perdomo Paz worked approximately sixty (60) to seventy (70) hours per week; Enrique Villaroel worked approximately sixty (60) to seventy (70) hours per week; Ervin Romero worked approximately seventy (70) to eighty (80) hours per week; and Jonathan Rios worked approximately sixty (60) to eighty (80) hours per week. Am. Compl. ¶¶ 44, 47, 50, 53. The final list of hours that Plaintiffs and class members worked on average was included in Plaintiffs' Supplemental Brief, which reflects that class members worked on average fifty (50) to ninety (90) hours a week for the Defendants. Dkt. No. 194.

that Defendants did not compensate Plaintiffs and class members for all overtime hours at the mandatory overtime rate of 1.5 times their regularly hourly rate. Am. Compl. ¶¶ 56, 61 81. Each of the named Plaintiffs state that they were not paid proper overtime compensation. Am. Compl. ¶¶ 44, 47, 50, 53. Thirdly, Defendants were made aware of Plaintiffs and class members not being compensated overtime wages because each of the named Plaintiffs made numerous complaints and requests for payments to the Defendants. Am. Compl. ¶¶ 45, 48, 51. Such complaints regarding overtime wages were made to Axis Hospitality, Melvin Aguilar, and Jose Vargas. Am. Compl. ¶¶ 45, 48. Defendants informed Plaintiffs they would be paid if they continued to work on the Virginia Construction Projects, but the appropriate compensation was still not given to the Plaintiffs. Am. Compl. ¶ 40. For those reasons, the Plaintiffs sufficiently stated a claim for overtime compensation under the FLSA.

### B. Counts II – V: State Wage Law Violations

Under Count II, Plaintiffs allege that Defendants violated Virginia's Minimum Wage Act ("VMWA"). Am. Compl. ¶ 84. The VMWA provides that

> [F]rom May 1, 2021, until January 1, 2022, every employer shall pay to each of its employees' wages at a rate not less than the greater of (i) $9.50 per hour or (ii) the federal minimum wage. . . . From January 1, 2022, until January 1, 2023 . . . wages at a rate not less than the greater of (i) $11.00 per hour or (ii) the federal minimum wage. . . . [and] From January 1, 2023, until January 1, 2025, . . . wages at a rate not less than the greater of (i) $12.00 per hour or (ii) the federal minimum wage.

Va Code § 40.1-28.8 et seq. Defendants employed Plaintiffs and class members between January 2022 and October 2023. Am. Compl. ¶¶ 43-52; Supplemental Brief at 2-3. Given this, Defendants were required to abide by the minimum wage amounts set by the VMWA. However, Defendants paid Plaintiffs and class members less than the minimum wage standard under the VMWA because Defendants did not compensate their employees for all hours worked. Am. Compl. ¶ 88. Therefore, the undersigned finds that the Plaintiffs sufficiently stated a claim for a violation of the VMWA.

Count III alleges that the Defendants violated the Virginia Wage Payment Act ("VWPA") because Defendants failed to pay Plaintiffs and class members for all hours worked, including overtime hours. Am. Compl. ¶ 94-99. The VWPA provides that it is unlawful to employ individuals and not pay them for all time worked. Va Code § 40.1-29 et seq. As discussed above, Plaintiffs and class members worked approximately fifty (50) to ninety (90) hours a week for the Defendants. Supplemental Brief at 2-3. Further, Defendants knew of their obligations to pay Plaintiffs and class members but refused to compensate them for all hours worked required under the VWPA. Am. Compl. ¶ 102. Thus, the undersigned finds that Plaintiffs have sufficiently pled their claim for a VWPA violation for failure to pay for all hours worked.

Count IV alleges that Defendants also violated the VWPA for failure to provide accurate itemized wage statements. Am. Compl. ¶ 106. Under Virginia Code § 40.1-29(C), employers are required to provide their employees with a written pay statement, either by pay stub or online accounting, that shows

> The name and address of the employer; the number of hours worked during the pay period if the employee is paid on the basis of (i) the number of hours worked or (ii) a salary . . . the rate of pay; the gross wages earned by the employee during the pay period; and the amount and purpose of any deductions therefrom.

Virginia Code § 40.1-29(C). Additionally, "the paystub or online accounting shall include sufficient information to enable the employee to determine how the gross and net pay were calculated." *Id.* Plaintiffs allege that during their employment, Defendants knowingly and intentionally failed to meet this requirement of the VWPA because Defendants did not maintain accurate timekeeping and did not provide accurate pay statements to Plaintiffs and class members for each pay period. Am. Compl. ¶ 110. The pay stubs that Plaintiffs and class members received did not include accurate gross and net wages earned, the total hours worked, their hourly wage rates, and the number of hours worked at each applicable rate. Am. Compl. ¶ 110. By not providing

wage statements compliant with the VWPA, Plaintiffs and class members were unable to effectively calculate the full extent of their underpayment for this lawsuit. Am. Compl. ¶ 111.

When an employer fails to keep proper and accurate records, an employee can meet their burden in a FLSA case if the employee can produce evidence that they did perform work for the employer and have enough evidence of the amount and extent of work completed to show a "just and reasonable inference" of compensation owed. *Anderson v. Mr. Clemens Pottery Co.*, 328 U.S. 680, 686-88 (1946). So long as the employee produces enough evidence to show a just and reasonable inference of their hours worked and compensation owed, "the burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to [negate] the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687-88. In the instant case, because the defaulting Defendants did not meet their statutory requirements for record keeping and provide wage statements for Plaintiffs and class members, Plaintiffs' recollection of their employment as supported by exhibits and declarations submitted in with the Motion for Default Judgment can establish a just and reasonable inference of the compensation that they are owed. Due to the defaulting Defendants not appearing or defending against this Motion, they have not met their burden of showing that the evidence Plaintiffs provided is not reasonable. Therefore, the undersigned finds that Plaintiffs have successfully pled their claim that Defendants violated the VWPA by failing to provide employees all accurate itemized wage statements.

Lastly, Count V alleges that Defendants violated the Virginia Overtime Wage Act ("VOWA") for failure to pay Plaintiffs and class members proper overtime compensation. Am. Compl. ¶ 113. Virigina Code provides that it is unlawful to employ individuals who work over forty (40) hours in a workweek without compensating them at a rate of one and one-half times

their regular rate of pay. Va. Code section 40.1-29 and 29.2 *et seq.* During the relevant period, Plaintiffs and class members worked approximately ten (10) to fifty (50) hours of overtime a week. Am. Compl. ¶ 55. Defendants knew of their failure to meet this statutory requirement to pay Plaintiffs and class members overtime wages because named Plaintiffs reported this error to at Axis Hospitality, Melvin Aguilar, and Jose Vargos. Am. Compl. ¶¶ 45, 48. Considering all other facts alleged and discussed above, the undersigned finds that the Plaintiffs sufficiently pled their claim for Defendants' violation of VOWA.

### C. Requested Relief

Plaintiffs' Amended Complaint sets forth only a general prayer of relief under the FLSA for all unpaid wages at both the minimum wage rate and overtime rate as required, liquidated damages, treble damages, interest, civil penalties, and attorneys' fees and costs. Am. Compl. ¶ 9. Originally, Plaintiffs' Motion specified that they seek default judgment against the Defendants for a total amount of $999,687.35 for all damages, interest, and civil penalties. Mem. In Supp. Of Mot. For Default J. at 29. Specifically, Plaintiffs sought $332,311.64 in unpaid wages and overtime wages. *Id.* Plaintiffs provided Exhibit B [Dkt. No. 85-2] to support their Motion. Plaintiffs' Damages Calculations (hereinafter Pls. Damages Calculations). Plaintiffs relied on their Declaration of Opt-In Plaintiffs [Dkt. No. 72-1] (hereinafter "Decl. of Opt-In Pls.") to determine the pay rate and employment period of non-payment to compute the total damages, interest, and penalties for 19 opt-in Plaintiffs. The Declaration includes the Plaintiffs' employment history with the Defendants, including the time period of employment, which of the Virginia Construction Projects they worked on, average hours worked per week, and hourly wage. Decl. of Opt-In Pls.

In a default case, well-pleaded factual allegations are accepted as true, but the calculation for damages is not. Wells Fargo Bank, N.A. v. Petrone, No. 2:22CV164, 2022 WL 9353510, at *2

(E.D. Va. Oct. 14, 2022). When a complaint does not specify a monetary amount for damages, a court must make an independent determination of what the damages award should be for default judgment. Alstom Power, Inc. v. Graham, No. 3:15CV174, 2016 WL 354754, at *2 (E.D. Va. Jan. 27, 2016). A court will evaluate plaintiff's basis for damages and will independently calculate damages in a default judgment. Petrone, 2022 WL 9353510, at *3. Plaintiff must prove to the court that they are entitled to damages and the court has discretion over how the sum of damages may be appropriately shown. Walsh v. Heavenly Hands Home Healthcare LLC, No. 2:22CV237, 2022 WL 18777533, at *5 (E.D. Va. Sept. 1, 2022).

In the instant case, the undersigned requested that the Plaintiffs file a supplemental memorandum to clarify information necessary for the Court to determine damages, interest, and attorney's fees and costs Plaintiffs are seeking in its Motion. *See* Dkt. No. 186. Plaintiffs filed a Supplemental Brief in Support of their Motion for Default Judgment (hereinafter "Supplemental Brief") [Dkt. No. 194] on February 9, 2026, which decreased their request relief to a total of $965,401.09 for actual damages, liquidated damages, treble damages, prejudgment interest, and civil monetary penalties. *See* Supplemental Brief at 5. The VWPA excludes individuals from liability for treble damages, prejudgment interest, and civil monetary penalties. *Cornell v. Benedict*, 301 Va. 342, 348 (2022). Given that Jose Vargas and Melvin Aguliar are Defendants that are being sued in their individual capacities, their liability is limited to $634,246.29, which excludes damages for the aforementioned categories. However, since Upland and Vargas Demo have entity status in this case, these Defendants will be held jointly and severally liable for the full amount of $965,401.09. Supplemental Brief at 5. All four Defendants will be held liable for Plaintiffs' attorney's fees. The undersigned incorporates the Supplemental Brief and supporting exhibits into the below evaluation.

**1) Actual Damages**

To calculate all unpaid hours worked at minimum and overtime wages ("actual damages"),

Plaintiffs used the following formula for each workweek

> (Plaintiffs' non-overtime hours worked each work week x Plaintiffs' straight-time hourly rate of pay) + (Plaintiffs' overtime hours worked each work week x (Plaintiffs' regular rate of pay x 1.5)) – pay previously remitted to Plaintiffs for the applicable work week (i.e., for weeks where Plaintiffs received regular wages for all hours worked at the straight time rate).

Mem. In Supp. Of Mot. For Default J. at 28.

Pursuant to this Court's January 30, 2026 Order [Dkt. No. 186], Plaintiffs updated their totals for damages and included all necessary information in their Supplemental Brief. Dkt. No. 194. The new total for damages reflects the removal of one opt-in plaintiff[5], decreasing the damages originally sought in this Motion. Dkt. No. 194. Plaintiffs are now seeking a total of $317,123.14 in actual damages. Dkt. Nos. 194, 194-2. Plaintiffs supported their revised damages amount in their Supplemental Brief with the declarations of each plaintiff and class member, which has not been amended. *See* Dkt. No. 72-1. The declarations describe the hourly wage, approximate number of hours worked weekly, length of employment, and location of construction sites for each class member. Dkt. No. 72-1. This information was then used to draft the revised chart for Plaintiffs' Damages Calculations (hereinafter "Pls. Revised Damages Calculations") [Dkt. No. 194-2]. Upon review of Plaintiffs' declarations, signed under penalty of perjury, the Supplemental Brief, and all exhibits submitted in support of damages, the undersigned finds that Plaintiffs are entitled to $317,123.14 in actual damages, as outlined in the following table.

---

[5] After the Motion for Default Judgment was filed, opt-in Plaintiff Julio Armando Castellanos stipulated to dismissal of his claims [Dkt. Nos. 141, 194]. Plaintiffs are no longer seeking default judgment on Castellanos behalf, thus Plaintiffs' removed Castellanos' information from their calculation of damages. Supplemental Brief at 1-2.

| First Name | Last Name | Projects Worked and Dates of Employment | Regular Rate | Midpoint Average Number of Hours Worked Weekly | Number of Weeks - Not Paid At All | Number of Weeks - Not Paid Overtime Premium | Actual Damages |
|---|---|---|---|---|---|---|---|
| Ana | Perdomo Paz | Dulles (01/2023 - 09/2023) | $ 18.00 | 60 | 8 | 34.00 | $ 14,760.00 |
| Ervin | Romero | Dulles (01/2023 - 08/2023) | $ 20.00 | 75 | 5 | 30.00 | $ 18,000.00 |
| Enrique | Villaroel | Dulles (01/2023 - 03/2023); Charlottesville (03/2023) | $ 20.00 | 65 | 5.43 | 8.00 | $ 9,057.14 |
| Jonathan | Rios | Dulles (02/2023 - 10/2023); Charlottesville (4/2022 - 01/2023) | $ 22.00 | 70 | 6 | 73.00 | $ 33,330.00 |
| Griselda | Aguilar | Dulles (01/2023 - 08/23/2023) | $ 20.00 | 74 | 6 | 32.00 | $ 19,760.00 |
| Careglis | Rios | Dulles (01/2023 - 08/2023) | $ 20.00 | 75 | 3 | 32.00 | $ 15,700.00 |
| Carlos | Garcia Perez | Dulles (01/2023 - 08/2023) | $ 20.00 | 85 | 8 | 32.00 | $ 28,000.00 |
| Julio | Alfonzo Castellanos | Dulles (01/2023 - 08/2023) | $ 24.00 | 75 | 4 | 32.00 | $ 20,640.00 |
| Walter | Castellanos | Dulles (01/2023 - 08/2023) | $ 23.00 | 65 | 3 | 12.00 | $ 7,935.00 |
| Hector | Lopez Montoya | Dulles (02/2023 - 09/2023) | $ 21.00 | 75 | 4 | 30.00 | $ 17,325.00 |
| Noel | Saral | Dulles (01/03/2023 - 08/2023) | $ 22.00 | 60 | 6 | 34.00 | $ 15,400.00 |
| Guadalupe | Jimenez | Dulles (01/2023 - 05/20/2023) | $ 16.00 | 58 | 5 | 19.00 | $ 7,376.00 |
| Hector | Barahona | Dulles (01/2023 - 08/2023); Manassas (11/2022 - 01/2023) | $ 20.00 | 66 | 8 | 38.00 | $ 20,440.00 |
| Helin | Castro | Dulles (01/03/2023 - 8/22/2023); Charlottesville (1/2022 - 12/2022) | $ 18.00 | 75 | 8 | 84.00 | $ 37,260.00 |
| Karen | Berrios | Dulles (01/2023 - 08/2023) | $ 18.00 | 75 | 4 | 30.00 | $ 14,850.00 |
| Mariozi | Perez | Dulles (07/2023 - 08/2023) | $ 20.00 | 70 | 3.43 | 4.00 | $ 6,000.00 |
| Wilder | Hernandez | Dulles (01/2023 - 08/2023) | $ 20.00 | 68 | 8 | 32.00 | $ 19,840.00 |
| Brengie | Stephania Rios | Dulles (02/2023 - 08/2023) | $ 20.00 | 65 | 4 | 25.00 | $ 11,450.00 |
| **TOTAL** | | | | | | | **$ 317,123.14** |

**2) Liquidated Damages and Treble Damages.**

When an employer violates the FLSA's compensation provisions, the employer will also be liable for liquidated damages at an additional amount equal to unpaid minimum and overtime

wages. *United States v. Edwards*, 995 F.3d 342, 344 (4th Cir. 2021); *see also* 29 U.S.C. § 216(b). Awarding liquidated damages for violations of the FLSA's overtime and minimum wage provisions is standard because such damages are given to compensate for the full amount of a plaintiff's loss for not being compensated for the full value of their labor. *Edwards*, 995 F.3d at 346-47. A court should award liquidated damages unless the "employer can demonstrate that the act or omission giving rise to such action was in good faith, and that the employer had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." *Chavez-Deremer v. Med. Staffing of Am., LLC*, 147 F.4th 371, 385 (4th Cir. 2025) (internal quotes omitted).

Here, Plaintiffs are seeking liquidated damages in of $317,123.14, which equals their actual damages. Supplemental Brief at 5; Pls. Revised Damages Calculations. The Defendants have failed to defend themselves in this action, so they have not provided an argument that they acted in good faith and did not believe their failure to properly compensate the Plaintiffs and class members was not in violation of the FLSA. Thus, it is proper for the Court to award liquidated damages. Given that this amount is equal to the total for actual damages listed in the Motion, the calculation for liquidated damages is considered reasonable based on the current state of the law. Therefore, the undersigned recommends that Plaintiffs receive a liquidated damages award in the amount of $317,123.14.

Plaintiffs also are seeking treble damages in the amount of $167,000.36. Plaintiffs' calculation for treble damages only includes the weeks in which Plaintiffs and class members were not paid any wages at all. Mem. In Supp. Of Mot. For Default J. at 28. Supplemental Brief at 5; Pls. Revised Damages Calculations. The VWPA provides that if an employer knowingly fails to pay an employee minimum wages and overtime pay, a court shall award the employee an amount equal to triple the total of wages due. Virginia Code §§ 40.1-28.8, *et seq.*, and 40.1-29.2 *et seq.*

"Knowingly" in this context is defined as either (1) having actual knowledge of information, (2) acting deliberately ignorant towards the truth and falsity of the information, or (3) recklessly disregarding the truth or falsity of information. Va. Code § 40.1-29.2(K). Here, the Plaintiffs reported to the Defendants on at least four occasions that they were not getting compensated for all hours worked, thus giving the Defendants actual knowledge of their failure to pay the Plaintiffs and class members minimum and overtime wages. Am. Compl. ¶¶ 44, 47, 50, 53. The undersigned, therefore, recommends a total award of treble damages in the amount of $167,000.36.

### 3) Civil Penalties and Prejudgment Interest

The VWPA provides that "any employer who knowingly fails to make payment of wages in accordance with subsection A or § 40.1-29.3 shall be subject to a civil penalty not to exceed $1,000 for each violation." Va. Code. § 40.1-29(H). Plaintiffs seek a total amount of $100,000 in civil monetary penalties. Supplemental Brief at 5; Pls. Revised Damages Calculations. Plaintiffs' amount of civil penalties reflects the total number of workweeks where Plaintiffs and class members were not paid their regular wages. Mem. In Supp. Of Mot. For Default J. at 28. Based on Plaintiffs' revised calculations in their Supplemental Brief, there were approximately one hundred (100) weeks that Plaintiffs and class members were not paid at all. Pl. Revised Damages Calculations. Therefore, the undersigned recommends a total award of $100,000 for civil penalties.

Plaintiffs are seeking $64,154.45 in prejudgment interest, as of February 9, 2026, the date Plaintiffs filed their Supplemental Brief. Supplemental Brief at 5. The VWPA provides that if an employee can show that their employer failed to pay wages as required under that statute, the employee can be awarded prejudgment interest. Va. Code § 40.1-29(J). Under this statute, courts are required to award prejudgment interest at the rate of 8% per annum on unpaid wages. *Id.* Plaintiffs calculated prejudgment interest using the following method for each pay period

(1) Multiply Plaintiffs' actual damages by .08 (8%), the figure that results is the Yearly Payment Interest; (2) divide the Yearly Interest by 365 (number of days in a year)—this figure equals the Daily Interest amount; (3) multiply the Daily Interest amount by the number of days the damages are overdue; and (4) the result is the interest due.

*See* Mem. in Support of Default. J. at 28; Supplemental Brief at 5; Pls. Revised Damages Calculations. Finding this calculation and total amount reasonable, the undersigned recommends awarding Plaintiffs and class members prejudgment interest of $64,154.45, plus any additional interest through the date of this judgment.

**4) Attorney's Fees and Costs**

The FLSA explicitly provides that if a plaintiff prevails, "the court in [the FLSA action] shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant." 29 U.S.C. § 216(b). Accordingly, Plaintiffs also request the remaining attorney's fees and costs incurred in pursuing this action against the remaining Defendants. Am. Compl. at 11; Dkt. No. 84.

Plaintiffs' Motion did not request a specific amount for attorney's fees and costs. On February 6, 2026, the undersigned ordered Plaintiffs to supplement their Motion with a specific total amount that they are seeking for attorney's fees and costs for litigating this Motion. Dkt. No. 188. In Plaintiffs Supplemental Brief, Plaintiffs included their basis for attorney's fees, which included a Declaration of Plaintiffs' Counsel, Robert W.T. Tucci, to support their grounds for this relief. *See* Ex. 3, Decl. of Robert W. T. Tucci (hereinafter "Decl. of Tucci"). Based on their Supplemental Brief, Plaintiffs seek a total of $27,338.50. in attorney's fees only. Dkt. No. 194; Decl. of Tucci at 6. Plaintiffs did not include a separate request for costs.

The total time spent by counsel on this matter, as to the defaulting Defendants, was 51.1 hours at an hourly rate of $535. Decl. of Tucci at 6. Time spent by counsel includes conducting

research, drafting pleadings, filing motions and supporting documents, and preparing for and attending hearings. *Id.* at 7. Having reviewed the supporting documentation, the undersigned finds these rates consistent with reasonable rates charged in the Eastern District of Virginia for like matters and the number of billable hours spent on the case to be reasonable. Therefore, the undersigned Magistrate Judge recommends an award of $27,338.50 in attorney's fees, pursuant to the FLSA.

## IV. RECOMMENDATION

For the reasons stated above, the undersigned Magistrate Judge recommends entry of default judgment in favor of Plaintiffs and class members against Defendants Upland Hospitality Group LLC, Vargas Demo and Paint, LLC, Jose Vargas, and Melvin Agular. In Sum, Plaintiffs are entitled to damages in the total amount of $965,401.09 and attorney's fees in the amount of $27,388.50, for a total of $992,789.59, and any additional interest accruing until the date of this judgment.

## V. NOTICE

**By mailing copies of this Report and Recommendation, the parties are notified that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of service on you of this Report and Recommendation. A failure to file timely objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.**

/s/
_____
Ivan D. Davis
United States Magistrate Judge

March 5, 2026
Alexandria, Virginia